**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| KURT VALENTI,<br><br>        Plaintiff,<br><br>   v.<br><br>JOSEPH ABATE. JR., SUPERINTENENT LYNDHURST PUBLIC SCHOOL DISTRICT, JOHN SEDLOCK, the BOARD OF EDUCATION OF THE TOWNSHIP OF LYNDHURST, and JOHN DOES 1 -5,<br><br>        Defendants. | Civ. Action No. 08-1609  (KSH)<br><br><br><br><br><br><br><br>__OPINION__ |

__KATHARINE S. HAYDEN, U.S.D.J.__

### I.    INTRODUCTION

Before the Court is the motion for summary judgment brought by defendants Joseph Abate, Jr., the superintendant of Lyndhurst Public School District, the Lyndhurst Board of Education ("BOE"), and John Sedlock, Sr., a member of the BOE, seeking dismissal of plaintiff Kurt Valenti's lawsuit, in which he alleges that he was unlawfully removed from his position as a technology consultant for the Lyndhurst Public School District ("Lyndhurst") so that defendants could replace him with Apex Computer Systems LLC, a company owned in part by John Sedlock's son.  Central to the parties' respective positions on this motion is the nature of Valenti's employment and whether he has federal constitutional protection for his expectation of continued employment.

1

## II.   BACKGROUND

### A.  Factual History

Joseph Valenti worked for Lyndhurst as a technology consultant from September 2001 to July 2007.  (Deposition of Joseph Valenti ("Valenti Dep.") 23:9-11.)  Valenti testified that when he was hired, another technology consultant named Jeff Perrapato also worked in the district. (*Id.* 13:1-16.)  Exactly when and how Valenti got the job is in dispute.  He contends that the BOE passed a resolution officially hiring him.  (Certification of Jason Santarcangelo ("Santarcangelo Cert."), Exh. 14.)  The resolution, dated October 16, 2001[1], reads in its entirety as follows:

> 1.  BE IT RESOLVED, at the recommendation of Joseph Abate, Jr., Superintendant of Schools, that the Lyndhurst Board of Education appoint Kurt K. Valenti, Technology Consultant, effective September 27, 2001. At a salary $41,600.00, prorated.  Employment will be provisional, subject to authorization approval for emergent hiring pending completion of criminal history background check (revised 6.30.98), and subject to submission of all required application documents.  This is a replacement position.

(*Id.*)

In addition to the BOE appointment, Valenti and Frank Benedetto, then president of the BOE, signed a document entitled, "Annual Agreement," dated September 18, 2001. (Santarcangelo Cert., Exh. 33, 17–20.)   That document specifies the terms of Valenti's employment "for the period commencing September 27, 2001 to June 30, 2002, at a salary of $41,600.00 prorated." (*Id.*)  It also lays out his duties as a technology consultant, an agreed upon work schedule, scheduled days off, and specific employment benefits.  (*Id.*)

---

[1] Despite the date appearing on the face of the document, the parties disagree on whether the BOE passed the resolution on that date. (Santarcangelo Cert., Exh. 14.)  Valenti avers that the document is dated incorrectly and the resolution was instead passed on September 18, 2001 (Pl.'s Facts ¶ 3, fn. 1), whereas defendants maintain that the document was accurately dated.  (Defs.' Resp. ¶ 3.)

For each year from the 2001-2002 school year to the 2006-2007 school year, the BOE and Valenti entered into new one-year contracts. (*Id.* ¶ 14.) While Valenti admits that his yearly contracts constituted employment contracts, he contends that they were not the "sole contracts" governing his employment. (*See* Pl Resp. to Defs.' Facts ¶5.) He submits that the BOE resolution operated as an open-ended employment contract governing the duration of his employment because it reflects no fixed end date to his appointment. (*Id.*) Defendants, however, counter that Valenti's employment terms were governed solely by each applicable annual contract, the first of which, he and the BOE initially entered into contemporaneously with the BOE resolution, as evidenced by the date on the document itself. (Certification of Victoria A. Cabalar ("Cabalar Cert."), Exh. C, 1.) Copies of Valenti's subsequent annual contracts, also included in the record, indicate that each specified a finite beginning and end employment date and contained a new salary provision as Valenti's salary increased. (*See generally, id.*)

Defendants contend that the initial BOE resolution was a mere formality necessary to allocate funds for the upcoming school year. They also aver that each subsequent year, new resolutions were passed contemporaneously with Valenti and the BOE entering into new annual contracts. For instance, in a June 27, 2002 meeting, the BOE passed a resolution renewing Valenti's contract and allocating BOE funds. It read:

> BE IT RESOLVED, at the recommendation of Joseph Abate, Jr., Superintendent of Schools, that the Lyndhurst Board of Education renew a contract with the following Technology Consultants for the 2002-03 school year.
>
> Jeff Perrapato  $45,600
> Kurt Valenti    $43,472

(Reply Certification of Howard B. Mankoff ("Mankoff Cert."), Exh. U, 1–2.)

3

On July 1, 2002, Valenti and the BOE entered into his second "Annual Agreement" nearly identical to the one governing the prior year. (Santarcangelo Cert., Exh. 33, 14–17.) This contract governed the "period commencing July 1, 2002 to June 30, 2003, at a salary of $43,472." (*Id.*) At his deposition, Valenti testified that although he worked under one-year contracts, "I just thought I was an employee of Lyndhurst High School, I was never – even though it was a one-year contract that I was signing I was never told I was not going to be rehired - I just assumed I was continually hired by the Lyndhurst School District." (Valenti Dep. 24:9-16.)

For the first five and a half years of his employment, Valenti was directly supervised by Abate, until January 17, 2007, when he came under the supervision of Laura Marinelli, head of the Lyndhurst High School business department. (Santarcangelo Cert., Exh. 24.) At his deposition, Valenti stated that during the course of his employment he never received any performance evaluations or feedback from his supervisors. (Valenti Dep. at 28:2-29-2.)

On January 17, 2007, the BOE voted at one of its meetings to hire Apex Computer Systems ("Apex"), Kadri Brogi, and Donna Romano-Leston as part-time technology consultants at the rate of $35.00 per hour. (Cabalar Cert., Exh. K, at 10.) According to the meeting minutes, the terms of the resolution state that "[t]he consultants will be used only on an as need [sic] basis for the remainder of the 2006-07 school year." (*Id.*) Apex is co-owned by John Sedlock, Jr., the son of defendant Sedlock. (Pl. Facts ¶ 56.)

On July 2, 2007, according to Valenti's deposition testimony, Anita Peschevich, principal of Lyndhurst High School, orally informed him that the BOE decided to not renew his contract. (Valenti Dep. 44:8-18.) He states that when he questioned her as to the reason for his nonrenewal, she informed him that because he was an "outside contractor" the BOE "basically

4

can do whatever they want" with him.  (*Id.*)  He did not receive any written confirmation that his contract would not be renewed.  (Valenti Dep. 47:1-4.)

It is undisputed that Valenti never submitted a written request to Abate, the BOE, or any other party requesting an explanation for why he was not offered a new contract.  (Pl. Resp. ¶ 10.)  On August 15, 2007, without previously indicating he would be there, Valenti attended the scheduled BOE meeting to ask why he had not been offered a new contract.  According to his deposition testimony,

> I signed up, I filled out my name, a bunch of things were going on that night, asked the board of education, asked Joe Abate, I said I'm just here to ask a question about why I was not rehired for the upcoming school year, Joe Abate turned around [and] said to me that I am an outside contractor, my contract ended on June 30th and that he nothing else to say about that.

(Valenti Dep. 49:4-13.)  According to Valenti, he received no further response from the BOE at the meeting or otherwise.  (*Id.*)

Valenti began collecting unemployment benefits for approximately six months.  (Valenti Dep. 86:11-23.)  Upon exhausting those benefits, he began working for Future Generations, a private company, where he earned a prorated weekly salary of approximately $50,000 per year.  (*Id.* 89:23-90:15.)  Valenti testified that he left Future Generations to take a position in the Kearny School District, earning an annual salary of approximately $41,000.  (*Id.* 90:23-91:20.)  According to Valenti, he accepted his new position because he sought a work schedule that allowed him to leave work at 4 pm so that he could resume coaching high school athletics and because he "just liked being in a school district."  (*Id.*)  At the onset of this litigation, Valenti was employed by the Kearny School District where he earns a regular salary and approximately $3,500 per sport season coaching various teams.  (*Id.* 92:93:19.)

5

### B.  Procedural History

On October 3, 2007, Valenti filed a complaint in state court alleging that defendants were liable under seven New Jersey state law causes of action: (1) violation of the Open Public Meetings Act, N.J.S.A. § 10:4-6 with respect to allegations that the BOE unlawfully discussed his employment in private; (2) violation of N.J.S.A. § 18A:12-24, a public school employment anti-nepotism statute with respect to the hiring of Apex; (3) breach of contract; (4) violation of the New Jersey Conscientious Employee Protection Act, N.J.S.A. § 34:19-1, *et seq.*; (5) defamation committed by Abate with respect to statements he allegedly made regarding the reasons for the decision to not retain Valenti; (6) tortious interference of contract; and (7) the tort of intentional or malicious infliction of harm.  He amended his complaint on March 18, 2008 to add two federal causes of action arising under 42 U.S.C. § 1983, one against the BOE and the other against the individual defendants, which allege that defendants infringed upon his civil rights by violating the Fourteenth Amendment.  (Am. Compl. ¶¶ 61-77.)  In total, his amended complaint contains nine counts alleging seven state law causes of action and two under federal law.  (*Id.* ¶¶ 32-92.)

Citing Valenti's federal claims, defendants timely removed the entire matter from state court to this Court on April 1, 2008 pursuant to 28 U.S.C. §§ 1441 and §1446. [D.E. 1.]  Upon the completion of discovery, defendants brought the instant joint summary judgment motion on March 27, 2009.  [D.E. 32.]  The record before the Court consists of:  excerpts of the deposition testimony of Valenti, Abate, Pescevich, Sedlock, Jr., Sedlock, Sr., Perrapato, as well that of various BOE members; a copy of the BOE's resolution appointing Valenti; Valenti's annual employment contracts from the 2001-2002 school year through the 2006-2007 school year;

minutes from relevant BOE meetings; multiple sections of the BOE's official policies and procedures; internal school memoranda concerning Valenti; and documents regarding Apex.

## III.    STANDARD OF REVIEW

Summary judgment may be granted under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The Court must "view the facts in the light most favorable to the non-moving party and [must] draw all inferences in that party's favor." *Gray v. York Newspapers*, 957 F.2d 1070, 1080 (3d Cir. 1992).  Summary judgment is improper if there is evidence sufficient to allow a reasonable jury to return a verdict for the non-moving party, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), or if the factual dispute is one which might affect the outcome of the suit under the governing law . . . ." *Id.*  The movant's burden, however, "may be discharged by 'showing' . . . that there is an absence of evidence to support the non-moving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Additionally, the non-movant "may not rest upon mere allegations or denials of the . . . pleading"; instead, the non-movant, "by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial."  *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## IV.  DISCUSSION

### A.  Federal Claims

Valenti has sued the BOE and the individual defendants on grounds that they violated his Fourteenth Amendment rights to equal protection and to procedural and substantive due process.  (Am. Compl. ¶¶ 61-77.)  To succeed on a claim under 42 U.S.C. § 1983, a plaintiff must

demonstrate: (1) the violation of a right secured by the Constitution; and (2) that the constitutional deprivation was committed by a person acting under the color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).

### 1. Procedural Due Process

Valenti claims that defendants ended his employment without affording him due process. To prevail on a violation of procedural due process rights, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'"  *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006).  Thus, in evaluating a procedural due process claim, courts should first determine "whether the asserted individual interests are encompassed within the Fourteenth Amendment's protection of life, liberty, or property."  *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) (quotations omitted). Valenti claims that his employment warranted constitutional protection because he possessed both a property interest in his job and a liberty interest in his professional reputation.

### a. Property Interest

The Supreme Court held in *Board of Regents of State College v. Roth,* 408 U.S. 564, 569–70 (1972), that:

> The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property.  When protected interests are implicated, the right to some kind of prior hearing is paramount.  But the range of interests protected by procedural due process is not infinite.

In a public employment context, "[t]o have a property interest in a job . . . a person must have more than a unilateral expectation of continued employment; rather, she must have a

legitimate entitlement to such continued employment." *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005) (*citing Roth*, 408 U.S. at 577).

Valenti contends that he held a "legitimate entitlement to [] continued employment" because the BOE resolution contained a starting date but no end date to his employment, and so he was appointed as technology consultant for an "indefinite term." (Pl.'s Br. 5.) He argues that employees who are appointed for indefinite terms, as opposed to those hired under "fixed" terms, enjoy greater protections under New Jersey statutory law. *See e.g.*, N.J.S.A. § 18A:17-3 (public school janitors appointed for indefinite term may be eligible for tenure protections). According to Valenti, the resolution dated October 16, 2001 was an "indefinite resolution of appointment." Therefore, when the BOE opted not to offer him a contract for the 2007-08 school year, the BOE effectively "removed" from his position and deprived him of his expectation of indefinite employment without providing him due process. (Pl.'s Br. 5.) Valenti concedes that if he were hired for a "fixed term," the BOE could "nonrenew" him pursuant to N.J.S.A. § 18A:27-4.1(b), which provides:

> A board of education shall renew the employment contract of a certificated or non-certificated officer or employee only upon the recommendation of the chief school administrator and by a recorded roll call majority vote of the full membership of the board. The board shall not withhold its approval for arbitrary and capricious reasons. A nontenured officer or employee who is not recommended for renewal by the chief school administrator shall be deemed nonrenewed. Prior to notifying the officer or employee of the nonrenewal, the chief school administrator shall notify the board of the recommendation not to renew the officer's or employee's contract and the reasons for the recommendation. An officer or employee whose employment contract is not renewed shall have the right to a written statement of reasons for nonrenewal pursuant to section 2 of P.L.1975, c. 132 (C. 18A:27-3.2) and to an informal appearance before the board. The purpose of the appearance shall be to permit the staff member to convince the members of the board to offer reemployment. The chief school administrator shall notify the officer or employee of the nonrenewal pursuant, where applicable, to the provisions of section 1 of P.L.1971, c. 436 (C. 18A:27-10).

Defendants reject that Valenti was employed for an "indefinite term," and contend that he was granted employment through his successive annual agreements contracts, which lasted for a specified year-long term. (Defs.' Br. 39.) They submit that he had no reasonable expectation that he would have his contract automatically renewed, and therefore, he had no property interest in his employment. Defendants maintain that the decision not to offer Valenti a new contract is not a "termination" of a tenured position implicating the Fourteenth Amendment. Rather, the event was a nonrenewal, something that Abate and the BOE could legally do for any reason under the statute. (*Id.* at 41–42.)

Under New Jersey law, "[t]o be enforceable, a contract must be sufficiently definite in its terms that the performance to be rendered by each party can be ascertained with reasonable certainty." *Friedman v. Tappan Dev. Corp.*, 22 N.J. 523, 531 (1956). Under this analysis, as the text of the memorialized appointing resolution relied upon by Valenti for his due process claim shows, the document lacks nearly all essential terms for an employment contract. (*See* Santarcangelo Cert., Exh. 14.) Significantly, the resolution does not define the duties expected of Valenti in his position of technology consultant. While it does specify Valenti's starting salary, as its sole essential contractual term, that term was superseded the next year when Valenti's employment contract raised his salary. Moreover, for each year of Valenti's employment except for 2006, the BOE passed nearly identical resolutions, which allocated funds to cover the salary provisions contained in the employment contracts it contemporaneously offered to Valenti. (*See Mankoff Cert.*, Exh. U at 1–2.) The Court does not find, under these circumstances, that the BOE conferred "instant tenure" upon Valenti through the passage of an appointing resolution with indefinite terms.

In *Campbell v. Atlantic County Board of Freeholders*, 145 N.J. Super. 316, 367 (Law Div. 1976), *aff'd*, 158 N.J.Super. 14, 385 A.2d 311 (App. Div. 1978), the court expressly held that a public employee did not have a protected property interest in his position by virtue of a Board of Freeholders appointment.  There, the Board of Freeholders passed a resolution that appointed plaintiff Campbell to the position of "emergency employment administrator," expressly "for the duration of [a particular] project . . . and for any replacement, substitution, extensions and renewals thereof."  *Id.* at 322 (citation omitted).  Before the project ended, however, the Board of Freeholders passed another resolution discharging the plaintiff, without prior notice or a hearing.  *Id.* at 321.  The plaintiff claimed that without due process of law, the defendants had deprived him of his property interest in maintaining his position for the term set forth in the appointing resolution.  *Id.* at 325.

The court rejected that claim, noting that no evidence was presented "to indicate that either plaintiff or defendant attributed any contractual effect to th[e] phrase" regarding the term of his appointment.  *Id.* at 322.  The court determined that the appointing resolution "was not a contract of employment, but an administrative mechanism necessary to formally effectuate the board's action."  *Id.* at 322-23.  Because "[a] mere expectancy" receives no due process protection, the court concluded that "standing alone, the resolution [wa]s insufficient to support a finding that plaintiff held a property interest in his position. . . ."  *Id.* at 325; *accord Siss v. County of Passaic*, 75 F.Supp.2d 325 (D.N.J. 1999) (Bissell, J.) (relying on *Campbell* to hold that plaintiff did not gain a Fourteenth Amendment property interest in his position of assistant county counsel by virtue of his appointment).

*Campbell* remains good law with respect to the legal significance of the appointing resolution.  As to the series of employment contracts, because each contained specific starting

and end dates, each contract expired by its own terms and Valenti's continued employment rested on the BOE's offer of a new contract.  As he conceded, if his annual contracts are the basis for his ongoing employment, then defendants' nonrenewal decision is governed by N.J.S.A. § 18A:27-4.1(b), which provides that "[a] board of education shall renew the employment contract of a certificated or non-certificated officer or employee only upon the recommendation of the chief school administrator [and] [a] nontenured officer or employee who is not recommended for renewal by the chief school administrator shall be deemed nonrenewed."

In *Baraka v. McGreevey,* the Third Circuit identified two types of employment contracts implicating a property right protected by the Fourteenth Amendment:  (1) a contract conferring a protected status, such as a tenure contract providing for permanent employment; and (2) a contract providing that it may be terminated only for cause.  481 F.3d 187, 207 (3d Cir. 2007) (*citing Unger v. National Residents Matching Program*, 928 F.2d 1392, 1399 (3d Cir. 1991)); *cf. San Filippo v. Bongiovanni*, 961 F.2d 1125, 1134 (3d Cir. 1992) ("[A] tenured university professor has a property interest in his position."); *Dee v. Borough of Dunmore*, 549 F.3d 225 (3d Cir. 2008) (under Pennsylvania law, state statute and collective bargaining agreement created for publicly-employed firefighter a cognizable property interest under the Fourteenth Amendment in not being suspended without just cause)).  Here, the Court has determined that Valenti's annual contracts did not confer tenure on his employment, and the record shows that none of the annual contracts contains a "for cause" provision.  (*See* Santarcangelo Cert., Exh. 33, 1–3.)

In fact, Valenti's own deposition testimony is revealing. "I just thought I was an employee of Lyndhurst High School, I was never – even though it was a one-year contract that I was signing, I was never told I was not going to be rehired.  I just *assumed* I was continually

12

hired by the Lyndhurst School District."  (Valenti Dep. 24:9-16) (emphasis added.)  Valenti's unilateral assumption that the BOE would "continually hire[]" him does not create a "legitimate entitlement to such continued employment" that is entitled to constitutional protection.  *Roth*, 408 U.S. at 577.  Valenti contends that the BOE denied him due process because it failed to follow N.J.S.A. § 18A:27-4.1(b), which requires a board of education to provide a nonrenewed employee with reasons for nonrenewal and to afford the employee an opportunity to argue for renewal in front of the board.  Valenti submits that he was unconstitutionally denied this right when the BOE did not provide reasons for nonrenewal and refused to discuss his employment when he made an unscheduled appearance at a BOE meeting

The provisions of § 18A:27-4.1(b) incorporate N.J.S.A. 18A:27-3.2, which imposes requirements on the employer as follows:

> Any teaching staff member receiving notice that a teaching contract for the succeeding school year will not be offered *may, within 15 days thereafter, request in writing a statement of the reasons for such nonemployment* which shall be given to the teaching staff member in writing within 30 days after the receipt of such request.

(Emphasis added).

In *Hubbard v. Springfield Bd. of Educ.*, 80 F.Appx. 757 (3d Cir. 2003), the court found that plaintiff bus driver, who did not submit written request for reasons for nonrenewal within 15 days, forfeited due process rights which may have otherwise been afforded to him under N.J.S.A. 18A:27-4.1(b)).  Valenti admits that he did not request in writing a statement for his reasons for nonemployment within 15 days, as the statute requires, and accordingly he forfeited any rights he held under New Jersey law to challenge his nonrenewal.

Valenti does not cite to any law in his brief to support his assertion that the expectation of the renewal of a one-year contract creates a property right.  Rather, he relies on *Cleveland Bd. of*

*Educ. v. Loudermill*, 470 U.S. 532, 538 (1985), for the proposition that property rights are not created by the Constitution, but instead stem from independent sources such as state laws.  Thus, he argues, the procedural protections of § 18A:27-4.1(b) create a property interest in the form of his statutorily-protected continued employment.  However, the Third Circuit has expressly held that *Loudermill's* recognition of a property interest in a job is inapplicable to the renewal of an annual employment contract.  *See Hubbard*, 80 F. Appx. at PINCITE.757

The Court concludes that Valenti has failed to establish that he possessed property interest in his continued employment.  As a consequence, the BOE did not violate procedural safeguards granted by the Fourteenth Amendment when it decided not to offer him an employment contract for the 2007-08 school year without providing notice and a hearing.

### b.  Liberty Interest

In his amended complaint, although not addressed in his opposition brief, Valenti alleges that defendants unconstitutionally infringed on his liberty interests by "stigmatizing him in his dismissal." (Am. Compl. ¶ 63.)   In *Roth*, the Supreme Court held that the protections of procedural due process extend to deprivations of liberty interests "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him."  408 U.S. at 569.  The Supreme Court found that the employer university, by not renewing plaintiff's contract as a professor, did not infringe upon his liberty because "there is no suggestion that [the university] imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities" as it did not put his "good name, reputation, honor, or integrity [] at stake."  *Id.* at 574 (internal quotations omitted).

In *Unger v. National Residents Matching Program*, 928 F.2d 1392, 1396 (3d Cir. 1991), a plaintiff alleged damage to her reputation based on the discontinuation of a university's

graduate residency program to which she was accepted.  In considering her claim, the Third

Circuit held she had not sufficiently alleged that the university's actions had "imposed upon her

a stigma or other disability that generally foreclosed her freedom to take advantage of other

educational opportunities." *Id.*

Valenti has not adduced any evidence indicating that defendants took any action to put

his "good name, reputation, honor, or integrity [] at stake" in their decision to not renew his

contract.  As to foreclosure of future employment opportunities, Valenti's deposition testimony

indicates that he began working for a private company, Future Generations, where he earned

approximately $50,000 per year and subsequently took a position with the Kearny School

District, where he is still employed, earning approximately $41,000 per year.  (Valenti Dep.

88:17-91:20.)  Evidently, Valenti found reemployment in both the private and educational

sectors after the nonrenewal decision.  His liberty interest claim fails.

### 2.  Substantive Due Process Rights

Valenti asserts that he was deprived of his substantive due process rights because

defendants abused their power by nonrenewing him in an arbitrary and capricious manner.  The

Third Circuit has held that a non-legislative government deprivation of an individual's property

"that comports with procedural due process may still give rise to a substantive due process claim

'upon allegations that the government deliberately and arbitrarily abused its power.'"

*Independent Enters. Inc. v. Pittsburgh Water & Sewer Auth.*, 103 F.3d 1165, 1179 (3d Cir.

1997).  To state a substantive due process claim, "a plaintiff must have been deprived of a

*particular quality* of property interest."  *DeBlasio v. Zoning Bd. of Adjustment*, 53 F.3d 592, 598

(3d Cir. 1995) (emphasis added).  Moreover, as held in a recent decision, "so far, [Third Circuit

precedent] ha[s] limited non-legislative substantive due process rights to real property

ownership." *Connection Training Services v. City Of Philadelphia*, Slip Copy, 2009 WL 4918102, at *4 (3d Cir. Dec 22, 2009).

As such, Valenti's position as a public employee does not qualify as a property interest entitled to substantive due process. The Third Circuit has expressly held, "[t]enured public employment is a wholly state-created contract right; it bears little resemblance to other rights and property interests that have been deemed fundamental under the Constitution." *Nicholas v. Penn. State Univ.*, 227 F.3d 133, 143 (3d Cir. 2000) (finding no property interest in a tenured professorship, thus holding it is not entitled to substantive due process protection); *accord McGovern v. City of Jersey City*, 2006 WL 42236, at *13–14 (D.N.J. Jan. 6, 2006) (relying on *Nicholas* to grant summary judgment to defendants on substantive due process claim because plaintiff's wages, pension, overtime, and non-promotion do not constitute a fundamental property right). Because Valenti's public employment position does not constitute a constitutional basis for his claims against the defendants, his substantive due process claims against defendants must be dismissed.

### 3. Equal Protection Rights

Valenti alleges that because they retained Lyndhurst's other technology consultant, defendants' decision to not renew his contract for the 2007-2008 school year, without a rational basis, violated his equal protection rights. (Pl.'s Br. 19.) Notwithstanding his status as a white male belonging to no protected class, he submits that defendants discriminated against him under the "class of one" theory set forth in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), where the plaintiff, a homeowner seeking to access the municipal water supply, was told she had to give a 33 foot easement on her property as opposed to the 15 foot easement required of other property owners. In that case, the Supreme Court recognized that, in some circumstances, an

16

equal protection claim can be sustained without implicating a protected class if plaintiff is singled out as a "class of one" without a rational basis.  *Id.* at 564.

But in *Enquist v. Oregon Dept. of Agriculture*, 128 S.Ct. 2146, 2148–49 (2008), the Supreme Court expressly held that the "class of one" theory does not apply to public employment claims.  In doing so, the Court stated that it was guided by the "common-sense realization that government offices could not function if every employment decision became a constitutional matter."  *Id.*  (Internal citations and quotations omitted.)  In his opposition brief, Valenti attempts to distinguish *Enquist* by contending that the Supreme Court's holding only applies to at-will employment situations.  (Pl.'s Br. 20.)

Valenti's argument is not persuasive.  In *Enquist*, the Supreme Court recognized that certain statutes exist to protect public employees.  "To be sure, Congress and all the States have, for the most part, replaced at-will employment with various statutory schemes protecting public employees from discharge for impermissible reasons.  But a government's decision to limit the ability of public employers to fire at will is an act of legislative grace, not constitutional mandate."  *Id.* at 2156 (internal citations omitted).  The *Enquist* decision issued a broad holding to bar any "class of one" in the public employment context, which has been regularly applied by federal courts.  *See, e.g.*, *Pignanelli v. Pueblo School District No. 60*, 540 F.3d 1213, 1220 (10th Cir. 2008) (holding that the equal protection "class of one" claim asserted by a teacher against a school district for failure to renew her contract was not a legally cognizable cause of action in light of *Engquist*); *Carone v. Mascolo*, 573 F.Supp.2d 575, 592 (D.Conn. 2008) (holding that plaintiff, a tenured teacher, did not have a viable "class of one" equal protection claim in challenging the issuance of a letter of reprimand and a two-day suspension, in light of *Engquist*'s holding that such claims are unavailable to public employees).

17

Because Valenti has not pleaded any theory on which he can show that defendants infringed upon an established constitutional right, the Court finds that his federal § 1983 claims against all defendants must be dismissed.

### B.  State Law Claims

Section 28 U.S.C. 1367(a) of the Judicial Improvements Act of 1990 states that federal courts "shall have supplemental jurisdiction" over claims if they are "part of the same case or controversy" over which the court has original jurisdiction.  Subsection (c) of the statute provides that a district court may, in its discretion, decline to exercise jurisdiction if it "has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c).  "In most cases, pendent state law claims should be dismissed without prejudice where the claim over which the district court has original jurisdiction is dismissed before trial." *Cindrich v. Fisher*, 2009 WL 1950073, at *6 (3d Cir. July 8, 2009).

Having ruled that Valenti's federal claims are subject to dismissal on summary judgment, the Court will not exercise jurisdiction over the remaining state law claims.

### V.    Conclusion

For the foregoing reasons, summary judgment is granted in favor of defendants on Valenti's federal claims, and the complaint will be dismissed.  An appropriate order will be entered.


/s /Katharine S. Hayden

Katharine S. Hayden, U.S.D.J.

Dated:  December 31, 2009